JOANNE L. FRANCISCUS (CA Bar No. 234831)
JoanneF@lassd.org
Gilberto Vera (CA Bar No. 296817)
GilbertoV@lassd.org
LEGAL AID SOCIETY OF SAN DIEGO, INC.
110 S. Euclid Avenue
San Diego, California 92114
Telephone: (877) 534-2524 x2663
Facsimile: (619) 263-5697

NISHA N. VYAS (CA Bar No. 228922)
nvyas@wclp.org
LORRAINE LÓPEZ (CA Bar No. 273612)
llopez@wclp.org
RICHARD ROTHSCHILD (CA Bar No. 67356)
rrothschild@wclp.org
WESTERN CENTER ON LAW AND POVERTY
3701 Wilshire Blvd. #208
Los Angeles, California 90010
Telephone: (213) 487-7211
Facsimile: (213) 487-0242

Attorneys for Proposed Intervenor-Defendant,
ALLIANCE OF CALIFORNIANS FOR
COMMUNITY EMPOWERMENT ACTION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN CALIFORNIA RENTAL HOUSING ASSOCIATION,

v.

Plaintiff

COUNTY OF SAN DIEGO, BOARD OF SUPERVISORS OF THE COUNTY OF SAN DIEGO, and DOES 1 through 20, inclusive,

Defendants

Case No. 3:21-cv-00912-L-DEB

**INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Date: June 21, 2021
Time: 10:00 a.m.
Courtroom: 5B
Judge: Hon. M. James Lorenz

# TABLE OF CONTENTS

I.     INTRODUCTION .......................................................................................... 1

II.    BACKGROUND ............................................................................................ 3

       A.    The COVID-19 Pandemic's Impact on Public Health and
             Economic Insecurity in San Diego County ........................................... 3

       B.    The Government Response to COVID-19 ............................................. 5

III.   LEGAL STANDARD ..................................................................................... 6

IV.    ARGUMENT .................................................................................................. 7

       A.    Plaintiff Has No Hope of Succeeding on the Merits of Any of Its
             Three Claims ........................................................................................... 7

             1.    Plaintiff's Contracts Clause Challenge Is Meritless. ................. 7

                   a.    The Ordinance Does Not Impose a Substantial,
                         Unforeseeable Impairment on Rental Agreements. ......... 8

                   b.    The Ordinance Is Constitutionally Reasonable and
                         Necessary to Address the COVID-19 Pandemic and
                         Associated Economic Fallout. ...................................... 11

             2.    Plaintiff Cannot Succeed on Its Takings Claim. ..................... 14

                   a.    Equitable Relief Is Unavailable for Plaintiff's
                         Takings Claim. .............................................................. 14

                   b.    Plaintiff's Takings Claim Is Frivolous. .......................... 15

             3.    Plaintiff Cannot Succeed on Its State Law Claim. .................. 18

                   a.    The Court Should Decline to Exercise
                         Supplemental Jurisdiction Over Plaintiff's State-
                         Law Claim. .................................................................... 18

                   b.    Plaintiff Will Not Succeed On the Merits of Its
                         State-Law Claim. ........................................................... 19

       B.    Plaintiff Has Not Shown A Likelihood of Irreparable Harm
             Absent Emergency Injunctive Relief ................................................... 21

       C.    The Balance of Equities Weighs Sharply Against Enjoining the
             Ordinance .............................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.*,
  2021 WL 1779282 (D.D.C. May 5, 2021) ........................................................... 1

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) .................................................. 7, 8, 11

*Amwest Sur. Ins. Co. v. Reno*,
  52 F.3d 332 (9th Cir. 1995) ................................................................ 21

*Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*,
  500 F. Supp. 3d 1088 (C.D. Cal. 2020) .................................................. 1

*Arpin v. Santa Clara Valley Transp. Agency*,
  261 F.3d 912 (9th Cir. 2001) .............................................................. 19

*Auracle Homes, LLC v. Lamont*,
  No. 20-CV-00829 (VAB), 2020 WL 4558682
  (D. Conn. Aug. 7, 2020) .............................................................. 2, 16

*Ballinger v. City of Oakland*,
  398 F. Supp. 3d 560 (N.D. Cal. 2019) ......................................... 7, 8, 10

*Baptiste v. Kennealy*,
  No. 1:20-CV-11335-MLW, 2020 WL 5751572
  (D. Mass. Sept. 25, 2020) .................................................................. 2

*Block v. Hirsh*,
  256 U.S. 135 (1921) ......................................................................... 12

*Bridge Aina Le'a, LLC v. Land Use Commission*,
  950 F.3d 610 (9th Cir. 2020) ................................................. 15, 17, 18

*Bridge Aina Le'a, LLC v. State of Hawaii Land Use Comm'n*,
  125 F. Supp. 3d 1051 (D. Haw. 2015),
  *aff'd sub nom. Bridge Aina Le'a, LLC v. Land Use Comm'n*,
  950 F.3d 610 (9th Cir. 2020) .............................................................. 14

iii

*California Bldg. Indus. Ass'n v. State Water Res. Control Bd.*,
    4 Cal. 5th 1032 (2018) ........................................................................................ 20

*Calvary Chapel Lone Mountain v. Sisolak*,
    831 F. App'x 317 (9th Cir. 2020) ...................................................................... 19

*Campanelli v. Allstate Life Ins. Co.*,
    322 F.3d 1086 (9th Cir. 2003) ........................................................................... 12

*Cedar Point Nursery v. Shiroma*,
    923 F.3d 524 (9th Cir. 2019) .............................................................................. 16

*City of Los Angeles v. Patel*,
    135 S. Ct. 2443 (2015) ........................................................................................ 11

*Colony Cove Props., LLC v. City of Carson*,
    888 F.3d 445 (9th Cir. 2018) .............................................................................. 17

*Colorado River Indian Tribes v. Town of Parker*,
    776 F.2d 846 (9th Cir. 1985) .............................................................................. 21

*Edgar A. Levy Leasing Co., Inc. v. Siegel*,
    256 U.S. 242 (1922) ......................................................................................... 2, 12

*Edgar A. Levy Leasing Co. v. Siegel*,
    258 U.S. 242 (1922) .............................................................................................. 9

*El Papel LLC v. Inslee*,
    2020 WL 8024348 (W.D. Wash. Dec. 2, 2020) ................................................ 1

*Elizondo v. City of Junction City*,
    No. 6:15-CV-1853-AA, 2016 WL 659082 (D. Or. Feb. 16, 2016),
    *aff'd*, 669 F. App'x 855 (9th Cir. 2016) ............................................................ 14

*Elmsford Apartment Assocs., LLC v. Cuomo*,
    2020 WL 3498456 (S.D.N.Y. June 29, 2020) ........................................... *passim*

*FCC v. Fla. Power Corp.*,
    480 U.S. 245 (1987) ............................................................................................ 16

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) .............................................................................. 24

*Garneau v. City of Seattle*,
    147 F.3d 802 (9th Cir. 1998) ................................................................. 17

*HAPCO v. City of Philadelphia*,
    No. CV 20-3300, 2020 WL 5095496 (E.D. Pa. Aug. 28, 2020) ............. 2, 10, 13

*Hawaii Housing Authority v. Midkiff*,
    467 U.S. 229 (1984) .............................................................................. 15

*Heights Apartments, LLC v. Walz*,
    2020 WL 7828818 (D. Minn. Dec. 31, 2020) ........................................ 1

*Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*,
    736 F.3d 1239 (9th Cir. 2013) ................................................................ 7

*Hohe v. Casey*,
    868 F.2d 69 (3d Cir. 1989) .................................................................... 22

*Home Building & Loan Association v. Blaisdell*,
    290 U.S. 398 (1934) .......................................................................... 12, 13

*Johnson v. City of San Francisco*,
    No. 09-CV-05503-JSW, 2010 WL 3078635
    (N.D. Cal. Aug. 5, 2010) ....................................................................... 21

*Kelo v. City of New London, Conn.*,
    545 U.S. 469 (2005) .............................................................................. 15

*Keyoni Enterprises, LLC v. City of Maui*,
    No. 15-CV-00086-DKW,
    2015 WL 1470847 (D. Haw. Mar. 30, 2015) ...................................... 21, 22

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
    480 U.S. 470 (1987) ......................................................................... 7, 17, 18

*Knick v. Twp. of Scott, Pennsylvania*,
    139 S. Ct. 2162 (2019) .......................................................................... 14

*Lee v. Cty. of El Dorado*,
    2006 WL 8458933 (E.D. Cal. Jan. 5, 2006) ......................................... 23

*Lexin v. Superior Ct.*,
    47 Cal. 4th 1050 (2010) ....................................................................... 20

v

*Lingle v. Chevron U.S.A. Inc.*,
    544 U.S. 528 (2005) ....................................................................................... 16

*Marcus Brown Holding, Co., Inc. v. Feldman*,
    256 U.S. 170 (1921) ....................................................................................... 12

*Melandres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) (Mot. ) .............................................................. 22

*Mussetter Distrib., Inc. v. DBI Beverage Inc.*,
    685 F. Supp. 2d 1028 (N.D. Cal. 2010) .......................................................... 11

*Napa Valley Educators' Assn. v. Napa Valley Unified Sch. Dist.*,
    194 Cal. App. 3d 243 (Ct. App. 1987) ........................................................... 20

*Rizzo v. Connell*,
    2012 WL 1937384 (D.N.J. May 29, 2012),
    *aff'd*, 517 F. App'x 111 (3d Cir. 2013) ........................................................... 24

*S. Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) .......................................................................... 10

*Selden v. Dinner*,
    17 Cal. App. 4th 166 (1993) ........................................................................... 24

*Siegel v. Bradstreet*,
    No. 08-2480-CAS-SSX, 2008 WL 4195949
    (C.D. Cal. Sept. 8, 2008),
    *aff'd*, 360 F. App'x 832 (9th Cir. 2009) ......................................................... 12

*Smith v. Oreol*,
    2018 WL 8755869 (C.D. Cal. May 30, 2018) ................................................ 23

*Sveen v. Melin*,
    138 S. Ct. 1815 (2018) ...................................................................................... 8

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
    535 U.S. 302 (2002) ................................................................................ 15, 17

*Vanguard Med. Mgmt. Billing, Inc. v. Baker*,
    No. 17-965-GW-DTBX, 2018 WL 6137198
    (C.D. Cal. Apr. 26, 2018) ......................................................................... 8, 10

vi

*Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark*,
   310 U.S. 32 (1940) ........................................................................... 9

*Villegas v. Schulteis*,
   2010 WL 3341888 (E.D. Cal. Aug. 25, 2010) .................................. 23

*Watson v. USP Lompoc*,
   No. 11-CV-1791-DDP-RZ, 2011 WL 941365
   (C.D. Cal. Mar. 17, 2011) ............................................................... 21

*Willis v. City of Seattle*,
   943 F.3d 882 (9th Cir. 2019) ......................................................... 11

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7, 24 (2008) ...................................................................... 7

*Xponential Fitness v. Arizona*,
   No. CV-20-01310-PHX-DJH,
   2020 WL 3971908 (D. Ariz. July 14, 2020) .................................. 14

*Yee v. City of Escondido, Cal.*,
   503 U.S. 519 (1992) ................................................................. 15, 16

**Statutes**

28 U.S.C. § 1367(c)(1) ...................................................................... 18

42 U.S.C. § 1437f(o)(7)(C)(ii) ............................................................. 9

Administrative Procedure Act .............................................................. 1

Cal. Civ. Code § 1946.1 ....................................................................... 9

Cal. Civ. Code § 1946.2 ....................................................................... 9

Cal. Civ. Code § 3273.10 ..................................................................... 6

Cal. Gov. Code § 8634 ........................................................... 2, 18, 19, 20

Cal. Gov. Code § 12955(a)-(p) ............................................................. 9

Cal. Govt. Code § 7060.4(b) ................................................................. 9

CARES Act § 4022 ............................................................................... 6

INTERVENORS' OPPOSITION TO PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION

CARES Act § 4023 ................................................................. 6

Copyright Act ...................................................................... 24

Emergency Services Act .............................................. 18, 19, 20

Tenant Protection Act of 2019 ............................................... 9

**Ordinances**

San Diego County Ordinance 10724 ............................... *passim*

San Diego Municipal Code § 98.0730 ....................................... 9

**Other Authorities**

Cal. Assembly Bill 3088 ........................................................ 5

Cal. Constitution .................................................................. 2

Cal. Senate Bill 91 ......................................................... 5, 20

https://info.socalrha.org/rental-assistance (accessed June 7, 2021) ....................... 13

https://www.cdc.gov/coronavirus/2019-ncov/more/pdf/CDC-Eviction-Moratorium-03292021.pdf (accessed June 7, 2021) ......................... 11

N.Y. State Executive Order 202.28 ...................................... 16

U.S. Const. amend. I ......................................................... 22

U.S. Const. amend. V (Takings Clause) ......................... *passim*

U.S. Const. art. I, § 10, cl. 1 (Contracts Clause) ............. *passim*

INTERVENORS' OPPOSITION TO PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF DEFINED TERMS

| Term | Definition |
|---|---|
| Benfer Decl. | Expert Declaration of Prof. Emily Benfer in Support of Intervenor-Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction |
| Cooley Decl. | Declaration of John Cooley in Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 18-1) |
| Doe Decl. | Declaration of Jane Doe in Support of Intervenor-Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction |
| Gale Decl. | Declaration of Larry Gale in Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 7-2) |
| Guzman Decl. | Declaration of Gabriel Guzman in Support of Intervenor-Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction |
| Hitzke Decl. | Declaration of Ginger Hitzke in Support of Intervenor-Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction |
| Mendoza Decl. | Declaration of Patricia Mendoza in Support of Intervenor-Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction |
| MOL | Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction (ECF No. 7) |
| Ordinance or Ord. | Ordinance 10724 |
| Pintor Decl. | Declaration of Irma Pintor in Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 7-5) |
| Solis Decl. | Declaration of April Solis in Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 7-6) |
| Wall Decl. | Declaration of Genea Wall in Support of Intervenor-Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction |

## I.   INTRODUCTION

On May 4, 2021, the San Diego County Board of Supervisors passed Ordinance 10724, a short-term moratorium on certain residential evictions beginning June 3, 2021, and set to expire "60 days after the Governor lifts all COVID-19-related stay-at-home and work-at-home orders." The Ordinance was passed after extensive public comment. Plaintiff Southern California Rental Housing Association, a landlord industry group, opposed the Ordinance and raised its grievances directly with the Board of Supervisors. Plaintiff's lobbying against the ordinance was unsuccessful. Plaintiff now turns to this Court to enact its preferred policy outcome by preliminarily enjoining the Ordinance.

Plaintiff's motion for preliminary injunction should be denied because Plaintiff will not prevail on the merits, Plaintiff's members will not suffer irreparable harm as a result of the Ordinance, and the balance of equities tips sharply against enjoining this emergency measure. This is not a matter of first impression. Plaintiff's challenge is a carbon copy of constitutional challenges to other local COVID-19 emergency eviction measures filed federal courts across the country. None of these challenges have succeeded.[1] To date, seven separate district courts have rejected claims raising the same theories Plaintiff raises here, and these decisions provide a roadmap for why Plaintiff's motion should be denied, too.[2]

_____

[1] Certain lawsuits challenging the federal Center for Disease Control eviction moratorium have succeeded, and are being appealed, on Administrative Procedure Act theories that are not relevant or at issue here. *See, e.g., Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.*, 2021 WL 1779282, at *4 (D.D.C. May 5, 2021).

[2] *Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*, 500 F. Supp. 3d 1088, 1094-95 (C.D. Cal. 2020) (denying motion to enjoin City of Los Angeles eviction moratorium); *El Papel LLC v. Inslee*, 2020 WL 8024348, at *6 (W.D. Wash. Dec. 2, 2020), report and recommendation adopted, 2021 WL 71678 (W.D. Wash. Jan. 8, 2021) (denying motion to enjoin City of Seattle eviction moratorium); *Heights Apartments, LLC v. Walz*, 2020 WL 7828818, at *11 (D.

On the merits, Plaintiff raises claims under the Contract Clause, Takings Clause, and the California Constitution. Plaintiff argues that the Ordinance violates the Contracts Clause because it delays landlords' ability to pursue evictions. But more than a century of Supreme Court precedent—not to mention the cascade of federal district court decisions upholding COVID-19 eviction moratoria—establishes that the County's police power includes the authority to do exactly what it did here: pause a landowner's right to repossess her property from a tenant. *See, e.g., Edgar A. Levy Leasing Co., Inc. v. Siegel*, 256 U.S. 242 (1922). Plaintiff's Takings Clause challenge is also squarely precluded by controlling Supreme Court precedent, which holds that equitable relief is unavailable for takings claims and that regulation of the landlord-tenant relationship does amount to a *per se* taking. *Supra* § IV.A.2. Plaintiff's state-law claim fare no better. Plaintiff argues that the County only has authority to enact the Ordinance in unincorporated areas, as opposed to the cities and towns within its borders. This argument ignores California Government Code § 8634—the Board of Supervisors' cited authority for enacting the Ordinance—which expressly authorizes counties, "[d]uring a local emergency," to enact orders "within designated boundaries where necessary to preserve the public order and safety." Because none of Plaintiff's claims hold water, the motion can be denied on an inquiry of the merits alone.

---

Minn. Dec. 31, 2020) (granting motion to dismiss complaint challenging Minnesota eviction moratorium); *Elmsford Apartment Assocs., LLC v. Cuomo*, 2020 WL 3498456, at *11 (S.D.N.Y. June 29, 2020) (holding that New York State's eviction moratorium and security deposit ordinances enacted in wake of COVID-19; *Auracle Homes, LLC v. Lamont*, 2020 WL 4558682, at *1 (D. Conn. Aug. 7, 2020) (denying motion to enjoin State of Connecticut COVID-19 emergency housing measures); *HAPCO v. City of Philadelphia*, No. CV 20-3300, 2020 WL 5095496, at *7 (E.D. Pa. Aug. 28, 2020) (same with respect to City of Philadelphia); *Baptiste v. Kennealy*, No. 1:20-CV-11335-MLW, 2020 WL 5751572, at *1 (D. Mass. Sept. 25, 2020) (same with respect to Commonwealth of Massachusetts measures).

Merits aside, the motion should be denied because Plaintiff has not met its burden to cannot show that landlords will suffer irreparable harm and because the equities weigh decisively against an injunction. Plaintiff's alleged harms, like lost rent and alleged (but unspecified) property damage, are compensable after the fact. Plaintiff's members can sue tenants for back-rent, or even seek damages or "just compensation" from the County for its meritless constitutional claims. The harm that will result from enjoining the Ordinance, however, cannot be undone. A number of ACCE's members—many of whom are on the brink of eviction—will face homelessness absent the Ordinance. Homelessness at any time is devastating; homelessness during a pandemic is deadly, for both tenants and the population at large. There is simply no comparison.

Plaintiff's motion for preliminary injunction should be denied.

## II. BACKGROUND

In March 2020, the COVID-19 pandemic brought the country to a halt. In response, federal, state, and local governments enacted eviction moratoria across the country, and San Diego County has been no exception. These moratoria have been effective in preventing evictions, curbing the spread of COVID-19, and avoiding a humanitarian crisis layered on top of the current public health crisis.

### A. The COVID-19 Pandemic's Impact on Public Health and Economic Insecurity in San Diego County

Housing instability was already an emergency in San Diego before COVID-19, and was exacerbated by the pandemic: "Between 2019 and 2020, the number of people experiencing homelessness for the first time in San Diego County increased by 79% and peaked between April and June 2020." Benfer Decl. ¶ 9-10. In cities where officials allowed emergency housing measures to expire, eviction filings surged to historic highs; without the Ordinance, the County will follow this trend. *Id.* ¶¶ 17-18.

While the current U.S. unemployment rate is 6.1%, preliminary reports

3

demonstrate higher rates of unemployment in California and San Diego of 8.3% and 6.7%, respectively, in April 2021. While these rates have declined since April 2020 rates, they remain almost double the unemployment rates recorded pre-pandemic. *Id.* ¶ 10. At the beginning of the pandemic, California and the San Diego region lost over 25,000,000 and 2,328,000 jobs, respectively *Id.* ¶ 11; As of April 2021, each region has only recovered half of those jobs. *Id.* ¶ 11. The San Diego region has lost approximately 40% of low paying jobs, which are jobs that do not require a college education and pay at or less than $15 per hour; as of March 2021, only 15% of these low paying jobs have reopened. *Id.*

Low-income households often have no safety net to tide them over during the pandemic, and many impacted households do not qualify for federal or local assistance. *See Id.* ¶ 12. Those who manage to scrape together enough to pay rent often do so at the expense of providing basic needs for themselves and their family. *Id.* ¶ 13. Approximately 12% of adults in California experience food insecurity— Black and Latinx populations at a rate twice that of white populations—and the pandemic has made this worse. *Id.* ¶ 15.

Few households in San Diego have been able to obtain the rental assistance appropriated at the federal level and state level. *Id.* ¶ 14. The San Diego region has $211,000,000 in rent and utility assistance available for distribution, but only 2% has been distributed as of June 1, 2021. *Id.* ¶ 14. The City of San Diego has received over 12,000 applications, with 74% of those applications submitted by extremely low-income renters. See *Id.* ¶ 14. Sixty-eight percent of applicants are unemployed and 87% of those unemployed have been unemployed for at least 90 days. Benfer Decl. ¶ 14. San Diego County has received numerous applications, as well, but has yet to disburse a significant percentage of the available rent assistance. Benfer Decl. ¶ 14. Due to delays, renter households are not receiving the funds and bear great risk of eviction as moratoria expire. *Id.* ¶ 14.

Widespread housing insecurity raises serious public health concerns,

4

especially in the San Diego region where only 42% of the eligible population have not been fully vaccinated. *See Id.* ¶ 25. Eviction forces families into transiency and crowded residential environments that increase new contact with others and make compliance with pandemic health guidelines difficult or impossible. Eviction increases the likelihood of "couch surfing" and staying with family and friends who may themselves be at high risk for COVID. *Id.* ¶ 22. Residential crowding and increased contact with others drive the spread of respiratory illnesses, such as COVID-19. Benfer Decl. ¶ 22. Housing stability is especially crucial to pandemic control because infected persons can spread the coronavirus before they start to show symptoms and possibly for weeks after symptoms. *Id.* ¶ ¶ 23–24. The pandemic exacerbates existing health risks of housing instability and creates new risks for the community at large. *Id.* ¶¶ 22-23. Displaced households cannot follow CDC recommendations regarding social distancing, hygiene, and quarantining, putting them at higher risk of contracting, spreading, and dying from COVID-19, particularly because these households are disproportionately like to suffer from pre-existing conditions that make them more vulnerable to the virus. *Id.* ¶ 23. "Safer at home" is meaningless without a home in the first place.

### B.     The Government Response to COVID-19

In response to COVID-19, state and local officials took steps to avoid exacerbating the housing crisis. At least 11 cities throughout San Diego (including the City of San Diego) enacted eviction moratoria at some point during the pandemic. The State Legislature also enacted eviction protections in Assembly Bill 3088 and Senate Bill 91.

The County's Board of Supervisors enacted Ordinance 10724 on May 4, 2021. The Ordinance prohibits landlords from "terminat[ing] a residential tenancy" absent "just cause." Ord. § 3(c). Under the Ordinance, "'just cause' requires a showing that the Tenant is an imminent health or safety threat," that is, "a hazard to the health or safety of other tenants or occupants of the same property." Ord. § 3(b); *id.* § 2(b). If

a landlord violates the Ordinance, a tenant "may institute a civil proceeding for injunctive relief, money damages (including damages for mental or emotion distress . . .), and all other relief the court deems appropriate." Ord. § 7(c). The Ordinance is time limited. It took effect on June 3, 2021, and is set to expire "60 days after the Governor lifts all COVID-19-related stay-at-home and work-at-home orders." Ord. § 10(b). Because these stay-at-home and work-at-home orders are set to end on June 15, 2021, the Ordinance will likely expire after 72 days, that is on August 14, 2021. Cooley Decl. Ex. 12.

The County's Ordinance has been only one piece of the federal, state, and local response, as governments have also created substantial aid programs for landlords and property owners. Recent federal legislation funded the County's emergency rental assistance program, which is slated to provide over $200 million in rental payments to landlords on behalf of tenants who are behind on rent. California's Assembly Bill (AB) 3088 also gave landlords with up to 4 residential rental units protection under California's Homeowners Bill of Rights' anti-foreclosure protections, established notice requirements for lenders who deny requests for mortgage forbearance due to COVID-19, and created a private right of action for landlords against any lender who violates the terms of the Act. Cal. Civ. Code § 3273.10; RJN Ex. 4 (AB 3088 factsheet). AB 3088's protections followed the protections of the federal CARES Act, which allowed borrowers—including landlords—with federally-backed mortgages to request forbearance, during which time the lender cannot charge additional fees, penalties, or interest. *See* CARES Act §§ 4022; 4023. For a building with fewer than five units, this forbearance can last up to 360 days. *Id.* § 4022(b)(2). Although these provisions of the CARES Act were scheduled to expire at the end of 2020, they have been effectively extended through administrative action.

## III.  LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of

right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, the moving party "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Ninth Circuit has also recognized that an injunction may issue where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff" but only if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Plaintiff cannot establish any of the requirements for issuance of a preliminary injunction.

## IV.  ARGUMENT

### A.  Plaintiff Has No Hope of Succeeding on the Merits of Any of Its Three Claims

Plaintiff raises three facial challenges, none of which hold water. First, Plaintiff's Contracts Clause theory has been repeatedly rejected by more than century of Supreme Court precedent. Second, with respect to Plaintiff's Takings Claim, the Supreme Court has squarely held that equitable relief is unavailable for violations of the Taking Clause. Third, Plaintiff offers no legal support for its state law claim, and its position is flatly contradicted by a forty-year-old California Attorney General opinion.

#### 1.  Plaintiff's Contracts Clause Challenge Is Meritless.

Article I, Section 10 of the U.S. Constitution prohibits states from passing laws "impairing the Obligation of Contracts." U.S. Const. Art. I, § 10, cl. 1. The Contracts Clause is "not to be read literally, *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 502–03, (1987), but "is 'narrowly construe[d]' in order 'to ensure that local governments can effectively exercise their police powers.'" *Ballinger v. City of*

*Oakland*, 398 F. Supp. 3d 560, 576 (N.D. Cal. 2019).

Courts apply a two-step inquiry under the Contracts Clause. First, "courts determine whether the state law has operated as a substantial impairment of a contractual relationship." *Ballinger*, 398 F. Supp. 3d at 576–77 (quotation marks omitted). Second, if and only if there is substantial impairment, courts evaluate the "means and ends of the legislation," including whether there is a "significant and legitimate public purpose behind the regulation." *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018). As is true of facial challenges more generally, Plaintiff must establish a likelihood that *all* applications of the Ordinance runs afoul of the Contracts Clause. *Vanguard Med. Mgmt. Billing, Inc. v. Baker*, No. 17-965-GW-DTBX, 2018 WL 6137198, at *18 (C.D. Cal. Apr. 26, 2018) (dismissing Contracts Clause claim).

Plaintiff's facial challenge to the Ordinance flunks both steps of the Contracts Clause analysis. First, the Ordinance does not substantially impair to any rental agreements—let alone *all* such agreements, as Plaintiff must show on a facial challenge—because it is a fully foreseeable adjustment to a complex regulatory scheme. Second, the Ordinance is reasonable and necessary because nearly a century of Supreme Court precedent has upheld far more invasive restrictions.

a.   <u>The Ordinance Does Not Impose a Substantial, Unforeseeable Impairment on Rental Agreements.</u>

Substantial impairment is evaluated with a view to "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 138 S. Ct. at 1822. Past regulation of an industry is central to the substantial-impairment analysis. "Because past regulation puts industry participants on notice that they may face further government intervention in the future," later regulations are "less likely to violate the contracts clause where [they] cover[] the same topic as the prior regulation and shares the same overt legislative intent to the protect the parties protected by the prior regulation." *Elmsford*, 2020 WL 3498456, at *8

8

(citations and quotation marks omitted).

There can be no serious dispute that the rental-housing market—and, in particular, the statutory scheme governing evictions—is heavily regulated. California law and the San Diego Municipal Code establish that, regardless of the terms of any rental agreement, a landlord may only evict tenants based on particular grounds enumerated by statute. *See, e.g.*, San Diego Municipal Code ("SDMC") § 98.0730 (listing permissible reasons for evicting tenancies of more than two years of duration); Cal. Gov. Code § 12955(a)-(p) (barring landlords from, *inter alia*, evicting tenants on the basis of race, gender, sexual orientation, and several other factors). The timing of evictions is also heavily regulated. *See, e.g.*, Cal. Civil Code § 1946.1 (60-day notice required for tenancies of one year or more); 42 U.S.C. § 1437f(o)(7)(C)(ii) (90-day notice required for termination of tenants supported by Housing Choice Voucher Program and Section 8 tenancies); Cal. Govt. Code § 7060.4(b) (120-notice required for termination of certain tenancies). These requirements are constantly changing. For example, the California legislature recently passed the Tenant Protection Act of 2019, which imposed enormous changes on landlords' ability to terminate tenancies (and thus evict tenants) without just cause (*id.* § 1946.2), and there is a long history of governments pausing the right to repossession in times of emergency. Hitzke Decl. ¶¶ 9-10; *see, e.g.*, *Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242, 247 (1922) (upholding New York law permitting tenants to continue occupation of rental property during housing shorting, confirming "sustaining regulations requiring large expenditures by landlords as a valid exercise of the police power"). Because the County's landlords entered rental agreements subject to the possibility that the permissible grounds for and timing of an eviction remedy—particularly in times of emergency—that Ordinance's temporary hold on certain evictions is does not "substantially impair" any contracts. *Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark*, 310 U.S. 32, 38 (1940) ("When he purchased into an enterprise already regulated in the particular to which he now objects, he purchased

subject to further legislation upon the same topic.").[3]

When considered in light of the fluctuating patchwork of regulations governing evictions, the temporary pause on certain evictions at issue here is far from a substantial impairment of rental agreements. For starters, Plaintiff has failed to submit even a *single* rental agreement in the record, and for good reason: eviction is not a contractual right; it is a statutory remedy. And because the Contracts Clause applies only to the impairment of contractual rights, Plaintiff's "fail[ure] to cite to the specific terms of any contract or contracts allegedly impaired by" the Ordinance is fatal to its claim. *See, e.g., Vanguard Med. Mgmt. Billing*, 2018 WL 6137198, at *19 (cleaned up) (dismissing Contracts Clause claim); *Ballinger*, 398 F. Supp. 3d at 576–77 ("[W]hen considering substantial impairment, [courts] focus on the importance of the term which is impaired." (quoting *S. Cal. Gas Co.*, 336 F.3d at 892)). Furthermore, the Ordinance preserves nearly all of a landlord's rights and remedies. Under the Ordinance, tenants retain obligations to pay rent and otherwise comply with rental agreements, and landlords may still evict tenants that pose an imminent threat to health and safety. Landlords retain their standard suite of remedies for breach, including the option to bring damages actions against breaching tenants (e.g., for rent nonpayment or property damage) and will likely be able to resume seeking evictions of tenants, as otherwise permitted by law, on August 14, 2021. As nearly every court addressing a similar COVID-19 eviction moratoria has held, the mere delay of an eviction remedy for a short period does not constitute a substantial impairment.

Plaintiff's facial challenge falters on the first prong of the Contracts Clause

---

[3] *See also HAPCO*, 2020 WL 5095496, at *7 (upholding Philadelphia eviction moratorium because "residential leases have been heavily regulated for many years."); *Elmsford*, 2020 WL 3498456, at *13 ("[P]ast regulation puts industry participants on notice that they may face further government intervention in the future . . . . Again, there is no question that residential leases are subject to a number of regulations that do not implicate the Contracts Clause.").

INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

analysis for another reason: Plaintiff cannot show, as it must in the context of a facial challenge, that *all* rental agreements within the County of San Diego are substantially impaired. *See Willis v. City of Seattle*, 943 F.3d 882, 886 (9th Cir. 2019) (plaintiff bringing facial challenge must show law is "unconstitutional in all relevant applications" (citing *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449 (2015)). Here, the Ordinance applies to both leases entered pre-pandemic and leases entered well after the pandemic began, *i.e.*, after San Diego landlords were already subject to several COVID-19 eviction moratoria.[4] For leases entered *after* the pandemic (and associated federal, state, and local eviction moratoria), further pandemic-related moratoria affecting the timing of evictions was fully foreseeable and thus not a substantial impairment. *See, e.g., Mussetter Distrib., Inc. v. DBI Beverage Inc.*, 685 F. Supp. 2d 1028, 1034 (N.D. Cal. 2010) (upholding statute governing "the beer manufacturer/distributor relationship" because "existing statutes govern various aspects of" that relationship  and therefore "[f]urther regulation in this field would not be unexpected."). Because there is a large swath of rental agreements to which the Ordinance clearly constitutionally applies—post-pandemic rental agreements—Plaintiff cannot show a likelihood of success on its facial Contracts Clause challenge.

> b. <u>The Ordinance Is Constitutionally Reasonable and Necessary to Address the COVID-19 Pandemic and Associated Economic Fallout.</u>

The Court need not reach the second prong of the Contracts Clause analysis. But if it does, Plaintiff's claim fails here too. Under this prong, if a measure is found to substantially impair a contract, "it is still constitutional if [1] the state has a significant and legitimate public purpose behind the regulation" and [2] "the

---

[4] *See, e.g.*, Cooley Decl. Ex. 11 (SCHRA's website: identifying 11 cities within San Diego County that have implemented eviction moratoria); https://www.cdc.gov/coronavirus/2019-ncov/more/pdf/CDC-Eviction-Moratorium-03292021.pdf (accessed June 7, 2021) (CDC eviction moratorium).

INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." *Siegel v. Bradstreet*, No. 08-2480-CAS-SSX, 2008 WL 4195949, at *4 (C.D. Cal. Sept. 8, 2008) (cleaned up), *aff'd*, 360 F. App'x 832 (9th Cir. 2009). Where, as here, the state is not a party to the contracts at issue, "courts defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Campanelli v. Allstate Life Ins. Co*., 322 F.3d 1086, 1098 (9th Cir. 2003) (cleaned up). A measure is unreasonable under the Contracts Clause only if it "is futile or has no reasonable relation to the relief sought." *Block v. Hirsh*, 256 U.S. 135 (1921).

Under more than a century of Supreme Court precedent upholding far more aggressive moratoria on landowners' rights to repossession, the Ordinance easily clears the threshold for reasonableness under the Contracts Clause. In response to response to post-World War I economic crises and the Great Depression, governments across the country exercised their police powers to pause landowners' rights to repossess property. Property owners then raised the same theories that Plaintiff raises here—and failed. Between 1920 and 1934, the Supreme Court on four separate occasions rejected similar Contracts Clause challenges, confirming the broad scope of the state's "police power . . ., under which property rights may be cut down, and to that extent taken, without pay." *Block*, 256 U.S. at 156; *Marcus Brown Holding, Co., Inc. v. Feldman*, 256 U.S. 170 (1921); *Edgar A. Levy Leasing Co., Inc. v. Siegel*, 256 U.S. 242 (1922); *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398 (1934).

The Supreme Court's seminal decision in *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398 (1934), in particular demonstrates the reasonability of the Ordinance here. *Blaisdell*, a Depression-era case, involved a Minnesota emergency measure that paused a property owners' right of repossession by a full two years, from May 1933 to 1935, provided rent payments of $40 per month. In rejecting a

12

Contracts Clause challenge to the law, the Supreme Court found five factors significant: (1) "the state legislature had declared in the Act itself that an emergency need for the protection of homeowners existed"; (2) "the state law was enacted to protect a basic society interest, not a favored group"; (3) the relief was appropriately tailored to the emergency it was designed to meet"; (4) "the imposed conditions were reasonable"; and (5) "the legislation was limited to the duration of the emergency." *Id.* at 434. Under this rubric, the Ordinance is clearly constitutional. Both the San Diego County Health Officer *and* the California governor have declared an ongoing state of emergency (Ord. 10724 § 1(c)-(d)),[5] and the Ordinance was enacted to protect the general interests of housing security and public health (*id.* § 1(p), (ff)-(gg)). The Ordinance is also carefully tailored and time-limited—tenants are not relieved of any contractual obligations, landlords are assured reasonable rental payments for the duration of the moratorium through the County's rental assistance program,[6] and the Ordinance will likely expire by mid-August of this year. As every other federal court addressing similar COVID-19 eviction moratoria has held, the *Blaisdell* precedent dooms Plaintiff's Contracts Clause challenge. *See, e.g., See HAPCO*, 2020 WL 5095496, at *6 (upholding Philadelphia moratorium, noting that "[t]he leading case in the modern era of Contract Clause interpretation, *Home Building & Loan Assn. v. Blaisdell*, is strikingly similar to the instant case").

---

[5] Plaintiff places an enormous amount of weight on the fact that an earlier draft of the Ordinance was styled as an "urgency" Ordinance that would have taken effect four weeks earlier. MOL 22. This has no relevance, especially considering that the final Ordinance contained extensive findings concerning the County's "severe housing affordability crisis" and the risk that renters "would not be able to locate affordable hosing within the County if they lose their housing." Ord. 10724 § 1(p).

[6] *See* https://info.socalrha.org/rental-assistance (accessed June 7, 2021) (SCRHA website describing instructions for landlords seeking rental assistance).

**2.      Plaintiff Cannot Succeed on Its Takings Claim.**

> a.      <u>Equitable Relief Is Unavailable for Plaintiff's Takings Claim.</u>

It is black-letter law that the Court cannot grant injunctive relief for Plaintiff's alleged violations of the Takings Clause the Fifth Amendment. The remedy for a taking of property is prescribed in the Fifth Amendment: "just compensation." The Supreme Court has made clear that "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2176 (2019). As a result, courts throughout the Ninth Circuit consistently deny injunctive remedies on takings claims where a party can pursue a claim for damages. *See, e.g., Bridge Aina Le'a, LLC v. State of Hawaii Land Use Comm'n*, 125 F. Supp. 3d 1051, 1066 (D. Haw. 2015) ("Injunctive Relief Claims with Respect to the Takings Claims Are Dismissed on the Ground that, Assuming a Taking has Occurred, an Injunction is Not a Proper Remedy for a Taking"), *aff'd sub nom. Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610 (9th Cir. 2020); *Elizondo v. City of Junction City*, No. 6:15-CV-1853-AA, 2016 WL 659082, at *5 (D. Or. Feb. 16, 2016) ("Plaintiffs' takings claims do not warrant injunctive relief, preliminary or otherwise. "Equitable relief is not available to enjoin an alleged taking ... when a suit for compensation can be brought against the sovereign subsequent to the taking."), *aff'd*, 669 F. App'x 855 (9th Cir. 2016); *Xponential Fitness v. Arizona*, No. CV-20-01310-PHX-DJH, 2020 WL 3971908, at *9 (D. Ariz. July 14, 2020) ("Plaintiffs' Fifth Amendment takings claim cannot support their request for injunction relief"). This case is no different. Even if Plaintiff were correct that the Ordinance effected a taking, the remedy is just compensation—which, in fact, the County has provided through its rental assistance program—not emergency equitable relief.

While Plaintiff nowhere cites the overwhelming authority against its request for equitable relief, it appears to argue that equitable relief is warranted here because

14

INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

the Ordinance allegedly violates the "public use" requirement in the Takings Clause by "benefit[ting] . . . tenants, rich or poor." MOL 25. That the Ordinance benefits tenants has nothing to do with the public-use requirement. The public-use requirement does not require that "property be put into use for the general public." *Kelo v. City of New London, Conn.*, 545 U.S. 469, 479 (2005). Indeed, the Supreme Court has made clear that tenant-protective measures—even measures that *directly transfer* title of property from lessors to renters—are consistent with the public-use requirement. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 235, 244 (1984) (holding that Hawaii law transferring property from lessors to lessees consistent with the public use requirement); *Kelo*, 545 U.S. at 481-82 (discussing *Hawaii Housing Authority*, 467 U.S. at 244). Plaintiff's public-use theory is squarely foreclosed by *Kelo* and *Hawaii Housing*, and thus it cannot escape the longstanding rule prohibiting equitable relief for Takings Claims.

b.   <u>Plaintiff's Takings Claim Is Frivolous.</u>

Takings claims "fall within two distinct classes." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 522 (1992). The first is a physical (or *per se*) taking, that is, "[w]here the government authorizes a physical occupation of property." *Id.* The second is a regulatory taking. In determining whether an action constitutes a regulatory taking, "[g]enerally, courts determine whether a regulatory action is functionally equivalent to the classic taking using 'essentially ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances.'" *Bridge Aina Le'a, LLC v. Land Use Commission*, 950 F.3d 610, 625 (9th Cir. 2020) (*quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002) (citations and internal quotation marks omitted)). Plaintiff argues alternatively that the Ordinance constitutes both a physical and regulatory taking. Both theories are frivolous.

***<u>Physical Takings Theory</u>***. Plaintiff asserts that Ordinance is a *per se* taking

15

because it "indefinitely suspend[s]" an owner's right to repossession. MOL 24-25. Plaintiff once again ignores controlling and fatal precedent. *First*, the Supreme Court has recognized regulatory takings only where the government "requires an owner to suffer a *permanent* physical invasion of her property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (emphasis added). Because the Ordinance is expressly time-limited, set to expire 60 days after the stay-at-home and work-from-home orders are lifted, any alleged "invasion" is not permanent.

*Second*, the *per se* takings doctrine has no application to property owners, like Plaintiff's members, who "decide[] to rent [their] land to tenants." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 529 (1992) (citations omitted); *FCC v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987) ("statutes regulating the economic relations of landlords and tenants are not *per se* takings"). Here, the Ordinance merely regulates landowner's relationships with tenants "invited by [Plaintiff's members], not forced upon them by the government," and thus there is no physical invasion for the purposes of the Takings Clause. *Id.* at 528. The *Elmsford* court came to the same conclusion with respect to New York's COVID-19 eviction moratorium, reasoning: "Since EO 202.28 is temporary on its face, and does not disturb the landlord's ability to vindicate their property rights, the Order is one more example of government regulation of the rental relationship that does not constitute a physical taking." *Elmsford*, 2020 WL 3498456, at *8 (citations and quotation marks omitted); *Auracle Homes, LLC*, 2020 WL 4558682, at *13 (denying preliminary injunction against Connecticut eviction moratorium because "Plaintiffs are unlikely to succeed on their claim based on a physical taking" (quotation marks and alterations omitted)).

*Third*, a claim for a *per se* permanent physical invasion exists only where the government "tak[es] a slice of every strand" in the "bundle of property rights." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 532 (9th Cir. 2019) (holding that there is no *per se* taking where "the sole property right affected by the regulation is the right to exclude."). Here, the Ordinance is a temporary restriction on the right to repossess

16

property; a landowner may still collect rent (including through public rental assistance programs), sell their property, and fully exploit their properties (subject to other laws and regulations) after the Ordinance's expiration (likely in a little over two months). Plaintiff's physical takings claims should therefore be dismissed.

***Regulatory Takings Theory.*** Plaintiff half-heartedly presses a regulatory takings theory in a single paragraph (MOL 24-25), but Plaintiff has not come close to showing that there are even serious questions on the merits. A regulatory taking exists only where "a regulatory action is functionally equivalent to a classic taking." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002) (citations and internal quotation marks omitted). This inquiry is judged by reference to the three *Penn Central* factors: "(1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020). For a facial challenge, a plaintiff must show that the "mere enactment of the regulation has gone too far," which is "an uphill battle since it is difficult to demonstrate that mere enactment of a piece of legislation deprived the owner of economically viable use of his property." *Garneau v. City of Seattle*, 147 F.3d 802, 807 (9th Cir. 1998) (cleaned up); *see also Elmsford*, 2020 WL 3498456, at *9.

Despite Plaintiff's conclusory statements about "devastating" impact of the Ordinance, each *Penn Central* factor weighs sharply against a regulatory taking. First, Plaintiff cannot (and has not even attempted to) show that the economic impact of the Ordinance's mere passage is anywhere close to the threshold for a regulatory taking, as the Ninth Circuit has observed that even "diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking." *See, e.g., Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987) (under first *Penn Central* factor, "compare the value that has been taken from

17

the property with the value that remains in the property" as a whole). Here, the Ordinance has little ultimate economic impact on landlords, as landlords can still collect rent while the Ordinance is in effect, receive emergency rental assistance funds, and otherwise exploit their property after the Ordinance expires. Hitzke Decl. ¶¶ 4-8. Second, the Ordinance does not upset "investment-back expectations" because the rental-housing industry is highly regulated and—one year into the pandemic, with associated federal, state, and local eviction moratoria—the Ordinance was hardly unforeseeable. *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 634 (9th Cir. 2020) (T]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end[.]"). Third, the "character of the government action" weighs against finding a taking where, as here, a government action is aimed at "what it perceives to be a significant threat to common welfare." *Keystone*, 480 U.S. at 485.

### 3. Plaintiff Cannot Succeed on Its State Law Claim.

Plaintiff also seeks a preliminary injunction on its state law claim, arguing that the County can only enforce the Ordinance within unincorporated areas within its borders. But as Plaintiff recognizes, the County, in passing the Ordinance, explicitly invoked its authority under the Emergency Services Act, California Government Code § 8634, which states that "During a local emergency the governing body of a political subdivision . . . may promulgate orders and regulations necessary to provide for the protection of life and property." That is exactly what the County did here.

#### a. The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State-Law Claim.

Lacking any grounds for asserting federal jurisdiction over its state law claim, Plaintiff asks this court to exercise supplemental jurisdiction. This Court should decline to do so because "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1) (authorizing district courts to "decline to exercise supplemental jurisdiction over a claim"). Plaintiff cites exactly zero caselaw supporting its

18

interpretation of § 8634. And, as explained further below, the California Attorney General has, for the last forty years, interpreted § 8634 to expressly permit exactly the type of county-wide ordinance at issue here. SCRHA is asking this Court to, as a matter of first impression of California state law, overturn the Attorney General's long-standing interpretation of a statute governing the relative authorities of different California political subdivisions during an emergency. This is exactly the type of sensitive, novel, and complex issue of state jurisprudence where a federal court should (especially in the absence of guidance from California courts) hesitate to "instruct[ ] state officials on how to conform their conduct to state law." *Calvary Chapel Lone Mountain v. Sisolak*, 831 F. App'x 317, 318 (9th Cir. 2020); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 927 (9th Cir. 2001) (affirming decision to decline supplemental jurisdiction over claim "because it raised an issue of first impression as to how [a California statutory] provision is to be applied").

> **b.**     Plaintiff Will Not Succeed On the Merits of Its State-Law Claim.

Under its plain language, § 8634 explicitly authorized the County to pass the Ordinance. The Ordinance was passed "during a local emergency." It was promulgated by the "governing body of a political subdivision." And it is an "order[] and regulation] necessary to provide for the protection of life and property." See Ord. 10724 § 1(r) ("Because experiencing homeless can exacerbate vulnerability to COVID-19, it is necessary to preserve and increase housing security for San Diego county residents; and to protect public health and prevent transmission of COVID-19, it is essential to avoid unnecessary displacement and homelessness.").

Plaintiff argues that § 8634 "does not say that a county regulation required by a county-declared 'emergency' applies to cities within that county." Mot. 27. Plaintiff is wrong. By its plain terms, § 8634 imposes no geographical limitation on the "orders and regulations" that a "governing body of a political subdivision" may

enact. And Plaintiff cites no cases (or other authority) reading any such geographical limitation into § 8634. To the contrary, the California Attorney General examined this exact issue over forty years ago and concluded that § 8634 authorizes California counties to "promulgate rules and regulations pursuant to section 8634 for the protection of life and property which will apply within cities in the county," rejecting Plaintiff's position as "defy[ing] common sense":

> [A]s to counties, it would, in the words of the Supreme Court quoted above, 'defy common sense' to conclude that as to matters such as fire, flood, epidemic or air pollution, matters which clearly do not respect corporate boundaries, a county's power and jurisdiction ended at such boundaries.

The California Supreme Court has repeatedly instructed that "Opinions of the Attorney General, 'while not binding, are entitled to great weight.'" *California Bldg. Indus. Ass'n v. State Water Res. Control Bd.*, 4 Cal. 5th 1032, 1042 (2018); *see also Lexin v. Superior Ct.*, 47 Cal. 4th 1050, 1087 n. 17 (2010) ("Attorney General opinions are entitled to considerable weight.").

This is all the more true here, where there is no caselaw going the other way: "In the absence of controlling authority, these opinions are persuasive 'since the Legislature is presumed to be cognizant of that construction of the statute.'" *Napa Valley Educators' Assn. v. Napa Valley Unified Sch. Dist.*, 194 Cal. App. 3d 243, 251 (Ct. App. 1987). In the forty years following the Attorney General's opinion the California legislature never amended § 8634. And in legislating on the COVID-19 pandemic specifically, the California legislature specifically circumscribed the area's where California counties could and could not enact legislation that was more stringent than California state law. The Ordinance scrupulously respects those limitations. *See, e.g.,* Ord. § 3(d) ("Actions to recover an unpaid COVID-19 rental debt . . . is governed by SB 91, and nothing in this ordinance shall be construed to supersede or conflict with SB 91.").

Finally, Plaintiff argues that "the Ordinance is not premised upon an urgent

need to protect life and property." Plaintiff's argument is belied by the Ordinance itself, which explicitly invokes the need to "protect public health and prevent transmission of COVID-19." In any event, the Ordinance is explicitly tied to the duration of the COVID-19 emergency declared by the Governor. As such, once there is no longer any "urgent need to protect life and property" due to COVID-19, the Ordinance will end of its own accord.

**B.** **Plaintiff Has Not Shown A Likelihood of Irreparable Harm Absent Emergency Injunctive Relief**

Plaintiff bears the burden to "show a likelihood of irreparable harm absent a preliminary injunction." *Watson v. USP Lompoc*, No. 11-CV-1791-DDP-RZ, 2011 WL 941365, at *1 (C.D. Cal. Mar. 17, 2011) (denying preliminary injunction). As this Court already made clear in denying Plaintiff's request for a temporary restraining order, Plaintiff has failed to meet that burden. ECF No. 13 at 4-6. Plaintiff's alleged injuries are, at best, *economic* harm from the Ordinance, precisely the type of alleged injury that does not justify emergency equitable relief. *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850 (9th Cir. 1985) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended are not enough" to "constitute irreparable injury.").

Plaintiff's irreparable harm argument rests primarily on the incorrect premise that constitutional violations establish a *per se* irreparable harm showing. MOL 28. But courts in this circuit and across the country routinely deny preliminary injunctions where, as here, a plaintiff's asserted constitutional injuries are purely economic in nature and thus compensable after the fact.[7] *See, e.g.*, *Keyoni*

---

[7] *Amwest Sur. Ins. Co. v. Reno*, 52 F.3d 332 (9th Cir. 1995) ("We reject Amwest's argument that economic harm constitutes irreparable injury when a property right protected by the Constitution has been impaired. . . . Economic harm frequently constitutes a deprivation of property, but it is nevertheless fully compensable by recovery of damages.") (memorandum disposition); *Johnson v. City of San*

*Enterprises, LLC v. City of Maui,* No. 15-CV-00086-DKW, 2015 WL 1470847, at *9 (D. Haw. Mar. 30, 2015) ("[T]he Enterprises are arguing that because they are alleging a violation of their commercial speech rights, they will suffer . . . a 75% loss in sales, fines totaling as much as $1,000 per day from the date the NOVs were issued, and ultimately, the potential shuttering of operations. Without minimizing the import of these effects, real or not, none of them are irreparable." (cleaned up)). Plaintiff's allegations of the *economic* effects of the Ordinance on its members—in terms of property damage or late rent—are harms can be redressed at a later date in individual actions through money damages. *Id.* Plaintiff's individual members may sue for back-rent, and may even seek damages from the County for its alleged Takings, Contracts Clause, and state-law claims. While those claims are meritless, even if they were viable, there is no reason why Plaintiff's members could not be made whole *without* emergency equitable relief.[8]

Absent a conclusive presumption of irreparable harm, Plaintiff's motion is dead in the water. The entire irreparable-harm record for Plaintiff's more than 2,000 members is comprised of *three* copied-and-pasted landlord declarations.[9] While each

_____

*Francisco*, No. 09-CV-05503-JSW, 2010 WL 3078635, at *3 (N.D. Cal. Aug. 5, 2010) ("[A]lthough Plaintiff makes a constitutional claim, his claim is essentially one for lost wages . . . Lost wages alone do not constitute a claim for irreparable harm as money damages would be sufficient to remedy the wrong should one ultimately be found to have been committed"); *Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir. 1989) ("[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits.").

[8] Plaintiff's cited case for the proposition that constitutional violations are sufficient to establish irreparable harm is distinguishable because it involves unlawful detention, not economic harm. *See, e.g.*, *Melandres v. Arpaio*, 695 F.3d 990, 1102 (9th Cir. 2012) (Mot. at 18).

[9] Each of these declarations end with virtually identical concluding paragraphs. *Compare* Pintor Decl. ¶ 7 ("Never could I have foreseen the pandemic and the burdensome regulations against rental housing owners that would follow in its

INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

of these declarations includes vague allegations of "mistreatment" or "harassment" on the part of certain tenants, and resulting "emotional harm and distress," none identifies a single concrete example of harassment or offer any support for the claim of imminent emotional distress. Gale Decl. ¶ 4-5; Pintor Decl. ¶¶ 5-6; Solis Decl. ¶¶ 4-5; *contra* Hitzke Decl. ¶¶ 6-8 (testifying that landlords have tools other than evictions, like civil restraining orders, to deal with certain tenant conduct). Plaintiff's assertions of harm are not just conclusory, they are not credible. If egregious tenant misconduct and criminal activity was rampant throughout San Diego County, surely Plaintiff would have been able to produce testimony from more than three people in a County of 3.3 million. And none of Plaintiff's three testifying members explain why they are likely to suffer *imminent* emotional harm or financial ruin between now and August 15, 2021, the date the Ordinance will likely sunset. Courts routinely deny motions for preliminary injunction, like this one, based on vague allegations of harassment or speculative assertions of emotion harm. *Smith v. Oreol*, 2018 WL 8755869, at *3 (C.D. Cal. May 30, 2018) (denying preliminary injunction because "Plaintiff does not set forth any specific allegations of harassment"); *Villegas v. Schulteis*, 2010 WL 3341888, at *3 (E.D. Cal. Aug. 25, 2010) ("Plaintiff must identify a risk of future harm that is more specific than a general fear of future harassment based on alleged past incidents of harassment"), report and recommendation adopted, 2010 WL 4723058; *Lee v. Cty. of El Dorado*, 2006 WL 8458933, at *2 (E.D. Cal. Jan. 5, 2006) ("emotional harm" not irreparable where plaintiff failed to show immediate, severe emotional and physiological distress).

Furthermore, the alleged "emotional harm" is not cognizable as irreparable

wake. . . ."), *with* Solis Decl. ¶ 8 ("Never could we have foreseen the pandemic and the burdensome regulations against rental housing owners that would follow in its wake. . . ."); Gale Decl. ¶ 6 ("Never could I have foreseen the pandemic and the burdensome regulations against rental housing owners that would follow in its wake . . . .").

INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

harm for Plaintiff's claims. Plaintiff's asserted irreparable harm must "stem from . . . harm to [Plaintiff's] legal interests," and there cannot be "a mismatch between [Plaintiff's] substantive . . . claim and the dangers [it] hopes to remedy through an injunction." *Garcia v. Google, Inc.*, 786 F.3d 733, 744 (9th Cir. 2015) (holding that assertions of emotional distress are not cognizable irreparable harm for copyright claim because "authors cannot seek emotional distress damages under the Copyright Act"). Here, Plaintiff's members legal interests at issue are their status as property owners and contractual counterparties, but emotion distress is generally not a cognizable injury for either Takings Clause violations or breach of contract.[10] Plaintiff's failure to show even a shred of evidence of imminent irreparable injury absent an injunction is alone sufficient to deny its motion.

### C.  The Balance of Equities Weighs Sharply Against Enjoining the Ordinance

The balance of hardships is not even remotely close to favoring Plaintiff. Enjoining the Ordinance risks worsening the County's existing housing crisis and increasing the spread of COVID-19. The declarations submitted by Intervenors establish that many tenants are barely hanging on to shelter and face harassment from landlords. Doe Decl. ¶¶ 10-15. Many have lost all or nearly all their income, and but for the Ordinance, would likely face immediate eviction from their homes. *Supra* II.A; Guzman Decl. ¶¶ 8-10; Doe Decl. ¶¶ 78; Mendoza Decl. ¶¶ 5-12; Wall Decl. ¶¶ 8-12 (Uber driver testifying to significant loss of income due to pandemic). Few of these vulnerable tenants have the luxury of a back-up plan, and many will face homelessness if the Ordinance is enjoined. *Id.* Homelessness itself carries a laundry

---

[10] *Rizzo v. Connell*, 2012 WL 1937384, at *3 (D.N.J. May 29, 2012) ("[I]ndirect costs to the property owner caused by the taking of his property are generally not part of the just compensation to which he is constitutionally entitled. These indirect costs . . . include . . . emotional distress."), *aff'd*, 517 F. App'x 111 (3d Cir. 2013); *Selden v. Dinner*, 17 Cal. App. 4th 166, 172 (1993) ("In general, damages are not recoverable for mental suffering resulting from breach of contract.").

list of irreparable harm for each evicted tenant, including a higher risk of being a victim of violent crime, a higher risk of health problems, and a higher risk of contracting and spreading COVID-19. *Supra* II.A. Simply put, enjoining the Ordinance will likely cost many County residents their lives.

On the other side of the ledger, the interests are simply not comparable. Plaintiff's members are concerned about their ability to fully financially exploit their property in the middle of a global pandemic that has claimed over 600,000 American lives. But even under the Ordinance, Plaintiff's members can collect rent from paying tenants or from the County's extensive assistance programs, and after the Ordinance expires these members may resort to the same suite of remedies available to them before the Ordinance took effect. There is simply no comparison. Because lives and public health are at stake on only one side of the scale, the balance of hardships weighs sharply against enjoining the Ordinance. Plaintiff's motion should be denied.

Dated: June 7, 2021          LEGAL AID SOCIETY OF SAN DIEGO, INC.

By:*/s/ Joanne L. Franciscus*
    Joanne L. Franciscus
    110 S. Euclid Ave.
    San Diego, California 92114
    Telephone:    (877) 534-2524 x2663
    Facsimile:    (619) 263-5697
    Email:        JoanneF@lassd.org

WESTERN CENTER ON LAW AND POVERTY

    Nisha N. Vyas
    Lorraine López
    Richard Rothschild
    3701 Wilshire Blvd. #208
    Los Angeles, CA 90010
    Telephone:   (213) 487-7211
    Facsimile:   (213) 487-0242

Email:     nvyas@wclp.org
llopez@wclp.org
rrothschild@wclp.org

Attorneys for Intervenor-Defendants, ALLIANCE
OF CALIFORNIANS FOR COMMUNITY
EMPOWERMENT ACTION